IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RONALD L. STOECKER, #K67356, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18−cv–1126−NJR |
| | ) | |
| LT. HOPPENSTEDT, | ) | |
| LT. FRANK, | ) | |
| LT. BAKER, | ) | |
| D. HESS, | ) | |
| BENNITTE, | ) | |
| URASKI, | ) | |
| LOVE, and | ) | |
| KAREN JAIMET, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Ronald Stoecker, an inmate of the Illinois Department of Corrections currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Pinckneyville Correctional Center. In his Complaint, Plaintiff claims the defendants violated his First, Fourteenth, and Eighth Amendment rights by failing to protect him from other inmates, retaliating against him for filing grievances, and issuing him a false disciplinary ticket. (Doc. 1).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify

1

cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations, which are divided below as Plaintiff divided them in his Complaint:

**Claim 1 – Failure to Protect, Intimidation, Cruel and Unusual Punishment**

Plaintiff worked at Pinckneyville as "clean up" on both the 7:00 a.m. to 3:00 p.m. and 3:00 p.m. to 11:00 p.m. shifts. (Doc. 1, p. 4). He had no issues working both shifts for nearly a year. *Id.* After Defendant Hoppenstedt became the 3:00 p.m. to 11:00 p.m. shift lieutenant, he approached Plaintiff in a hostile and aggressive manner after attempting to have him removed from his job without success. *Id.* Hoppenstedt accused Plaintiff "of trying to go over his head

2

about a night job." *Id.* He threatened Plaintiff with a disciplinary ticket and termination from his job if he spoke to anyone above him about job assignments. (Doc. 1, pp. 4-5).

Plaintiff did not speak to anyone about Hoppenstedt's behavior, and he told Hoppenstedt as much. (Doc. 1, p. 5). Hoppenstedt did not believe him, however, and continued to threaten Plaintiff and attempt "to intimidate him by intentionally placing his life and safety in jeopardy." *Id.* He did this by telling Plaintiff "in a loud voice so that the whole wing could hear him say it: 'The only reason I don't let you come out at night is because you work for I-A and you're a sex offender bitch.'" (Doc. 1, p. 6). Hoppenstedt knows that prison life is more dangerous than normal for an inmate labeled a snitch or sex offender. *Id.* He yelled these things about Plaintiff "because he wanted another inmate to hear this statement and do something harmful to Plaintiff." *Id.* At least six inmates heard what Hoppenstedt yelled about Plaintiff. *Id.*

As a result of Hoppenstedt's statements, Plaintiff was struck in the face and head by another inmate. (Doc. 1, p. 7). Plaintiff notified Internal Affairs of what Hoppenstedt told his wing. *Id.* He also told them he did not feel safe because of what was said, particularly because he was attacked by an inmate because of it. (Doc. 1, p. 8). Internal Affairs Officers Bennitte and Uraski were made aware of the statements made by Hoppenstedt and that Plaintiff "had been attacked by an inmate" because of them, and "they did nothing to protect him from future threats and harms." *Id.*

Plaintiff wrote a grievance about Hoppenstedt's actions, notifying Defendant Hess about the threat to Plaintiff's safety. (Doc. 1, p. 9). Hess "turned a blind eye to this clear threat to Plaintiff's safety and made the threat even worse by informing Defendant Hoppenstedt that Plaintiff had written a grievance on him for labeling him a snitch and sex offender." *Id.* The grievance angered Hoppenstedt, so he lied and told Hess that Plaintiff was disrespectful toward

3

him and the 3:00 p.m. to 11:00 p.m. staff. *Id.* Had that actually happened, Hoppenstedt would have written Plaintiff a ticket for insolence, and he would have been removed from his job assignment. *Id.* Hess did not investigate Plaintiff's claims about Hoppenstedt's behavior and the threat it posed to him, even though there were witnesses available. (Doc. 1, pp. 10-11).

**Claim 2 – Retaliation**

After Plaintiff wrote the grievance about Hoppenstedt loudly calling him a sex offender and snitch, "he was stopped from coming out on 3 to 11 shift." (Doc. 1, p. 12). This was in retaliation for his grievance, because before the grievance, Plaintiff got to work on both shifts. *Id.* After Plaintiff wrote the grievance, he "was constantly harassed by Lt. Hoppenstedt." (Doc. 1, p. 13). Bennitte told Plaintiff that Hoppenstedt "would not let the fact that Plaintiff had [written] a grievance on him go." *Id.* Plaintiff also was told that if he "squashed" the grievance, he could be transferred to Big Muddy Correctional Center, otherwise he would be placed in segregation. *Id.*

On January 16, 2018, Hoppenstedt approached Plaintiff and told him that if he did not drop his grievance, Lieutenant Baker had already told him that he could fire Plaintiff from his remaining work shift. (Doc. 1, p. 14). Plaintiff gave Bennitte an emergency grievance about Hoppenstedt's threats, and Bennitte assured Plaintiff that he would forward his grievance to the proper person. (Doc. 1, p. 14-15). To this day, Plaintiff has not heard back about the status of that grievance. (Doc. 1, p. 14). He believes Baker and Bennitte's actions were retaliatory and designed to help Hoppenstedt. (Doc. 1, pp. 14-15). When Plaintiff refused to drop the grievance, Bennitte placed him in segregation to frustrate him, though he claimed that it was for Plaintiff's protection. (Doc. 1, p. 15). This move did not protect Plaintiff, however, because correctional officers "can come and go anywhere" and "they have friends, family members, and co-workers

4

that work at the facility and are willing to retaliate against the inmate for them or on their behalf." (Doc. 1, p. 16). Bennitte, Baker, Uraski, and Frank "all approached Plaintiff with a threat of some form of punishment if he didn't squash the grievance." *Id.*

Defendants Uraski and Frank told Plaintiff to sign a statement indicating that he did not feel unsafe or fear for his life. (Doc. 1, p. 17). They also told Plaintiff that if he did not sign it, he would be moved to a different house or protective custody, and this move would make other inmates believe that he was a snitch. *Id.* Plaintiff signed the form because of these threats and because he did not want to be punished for writing the grievance. *Id.* Frank also wrote a disciplinary ticket on Plaintiff for "304 – Insolence" and "211 – Possession or solicitation of unauthorized personal information" in retaliation for Plaintiff writing the grievance against Hoppenstedt. (Doc. 1, p. 18). Frank knew that writing a ticket with these charges would result in Plaintiff being placed in segregation and losing his job, which is what Hoppenstedt threatened him with if he did not drop his grievance. (Doc. 1, p. 19). The ticket was based on a phone conversation that Plaintiff had with his sister during which she gave Plaintiff some information about Hoppenstedt after looking him up on Facebook. (Doc. 1, pp. 19-20).

The ticket was written on January 17, 2018, and by the next week, Plaintiff was given a maximum-security transfer because of it. (Doc. 1, p. 22). To "substantiate the charges" on the ticket, "it would have to [have] been proven that Plaintiff asked his sister to gather information about Lt. Hoppenstedt . . . which by reading the ticket is not something that is verified or can be substantiated by what Lt. Frank wrote." (Doc. 1, p. 21). Frank, along with Uraski, told Plaintiff that if he dropped his grievance, the ticket against him would be thrown out. (Doc. 1, p. 22).

Counselor Hess wrote on Plaintiff's grievance that Hoppenstedt disavowed the allegations of unprofessional conduct. (Doc. 1, p. 20). The Administrative Review Board also

5

found that "staff misconduct [was] unsubstantiated." (Doc. 1, pp. 20-21). These findings were made without investigators interviewing or investigating Plaintiff's claims. (Doc. 1, p. 21).

**Claim 3 – Intentional Infliction of Emotional Distress**

Defendants Love and Jaimet "have a policy in place that allows inmates' complaints about officers to be ignored." (Doc. 1, pp. 22-23). This policy has created an environment in which there are no consequences for officers when they violate rules of conduct and interaction with inmates. (Doc. 1, p. 23). Love and Jaimet both know that without consequences for breaking the rules, officers begin to do whatever they want. *Id.* "Defendants have been aware of the lawless mindset of the officers at Pinckneyville over the [past] few years . . . using excessive force, writing bogus tickets, due process violations, overcrowding, understaffing, and nothing has been done to fix this environment/conditions." *Id.* Other lawsuits have been filed about these issues over the past two years, putting Love and Jaimet on notice and giving them ample time to remedy the problems. (Doc. 1, p. 24). Instead, they have done nothing. *Id.*

Hoppenstedt, Bennitte, Hess, Uraski, Frank, Baker, Love, and Jaimet "conspired and contributed to intentionally inflicting an emotional distress on Plaintiff by deliberately subjecting him to an environment of undisciplined officers who have a history of retaliating against inmates like they did against Plaintiff by subjecting him to segregation unnecessarily and giving him a maximum security transfer to Menard." (Doc. 1, p. 25).

Plaintiff seeks monetary damages from the defendants. *Id.* He also wants to be transferred to Big Muddy Correctional Center so he can participate in the sex offender treatment program. (Doc. 1, p. 26).

**Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into five counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Eighth Amendment failure to protect claim against Hoppenstedt for publicly identifying Plaintiff as a government informant and sex offender, and against Bennitte, Uraski, and Hess for ignoring the subsequent threat to Plaintiff's safety.
>
> **Count 2 –** First Amendment retaliation and/or prior restraint claim against Hoppenstedt, Baker, Bennitte, Frank, and Uraski for punishing Plaintiff for filing a grievance against Hoppenstedt.
>
> **Count 3 –** Fourteenth Amendment due process claim against Frank and Uraski for issuing Plaintiff a disciplinary ticket in retaliation for his filing a grievance against Hoppenstedt.
>
> **Count 4 –** First and/or Fourteenth Amendment claim against Hess for failing to investigate Plaintiff's grievance regarding staff misconduct.
>
> **Count 5 –** State law intentional infliction of emotional distress claim against Defendants for subjecting Plaintiff to an environment in which undisciplined officers retaliate against inmates, and retaliating against Plaintiff by placing him in segregation and transferring him to Menard.

As discussed in more detail below, Counts 1, 2, and 5 will be allowed to proceed past threshold, at least in part. Counts 3 and 4 will be dismissed, and any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* standard.

**Count 1 – Failure to Protect**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833

(internal citations omitted). "To adequately plead a failure-to-protect claim, a prisoner must allege that officials were subjectively aware of and disregarded an objectively serious risk of harm to the prisoner." *Cobian v. McLaughlin*, 717 F. App'x 605, 610 (7th Cir. 2017) (citing *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008)). A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "A generalized risk of violence is not enough, for prisons are inherently dangerous places." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005)).

The intentional identification of an inmate as a government witness or "snitch" may give rise to a failure to protect claim under the Eighth Amendment, *see Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. 2008) ("allegations of a prison officer's deliberate disclosure of dangerous information about an inmate's status are sufficient to state a claim under the Eighth Amendment provided the alleged danger is facially concrete and plausible enough to satisfy basic pleading standards."), as can a prison official's intentional heightening of the risk of future injury to a prisoner, even if a prisoner is not ultimately injured. *See Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014) (citing *Budd v. Motley,* 711 F.3d 840, 843 (7th Cir. 2013)); *see also Thomas v. Illinois,* 697 F.3d 612, 614-16 (7th Cir. 2012) (explaining that "hazard, or probabilistic harm" could allow recovery); *Irving v. Dormire,* 519 F.3d 441, 449 (8th Cir. 2008) (concluding that guard's alleged attempts to induce other inmates to assault plaintiff prisoner "posed a substantial risk of serious harm to [the prisoner's] future health")).

Plaintiff claims that Hoppenstedt intentionally identified him as a government informant and sex offender within earshot of other inmates to induce the inmates to attack him. He also

claims that he was attacked because of Hoppenstedt's actions. These allegations are sufficient to state a failure to protect claim against Hoppenstedt.

Plaintiff has failed to state a claim against Hess, Uraski, and Bennitte, however. As noted above, in order to bring a failure to protect claim, Plaintiff must show that prison officials were aware of a specific, impending, and substantial threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In addition, damages for "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence," *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), or fear of an unrealized attack, *see Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996). Considering this authority, the allegations directed at Hess, Uraski, and Bennitte fall short of stating a viable claim. It appears that Plaintiff had already been attacked when he contacted these defendants, and the allegations do not suggest that he was attacked again afterward, or that he communicated a specific and impending threat to his safety to them. Accordingly, Count 1 shall be dismissed without prejudice as against these three defendants.

**Count 2 – Retaliation and/or Prior Restraint**

Penalties that follow protected speech are characterized as "retaliation," while threats of penalties for future protected speech are referred to as "prior restraint"—both concepts are related and actionable under the First Amendment. *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). To establish a claim of retaliation, Plaintiff "must show that he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." *Felton v. Huibregtse*, 525 F. App'x 484, 486 (7th Cir. 2013) (citing *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Prior restraint, on the other hand, occurs when state actors threaten penalties for future speech. *Fairley*, 578 F.3d at 525.

Plaintiff claims that, in response to his filing a grievance against Hoppenstedt, he was harassed, threatened, and prevented from going to one of his work shifts by Hoppenstedt, Bennitte put him in segregation, Uraski and Frank threatened to move him to make inmates believe he was a snitch, and Frank wrote a disciplinary ticket against him. He also claims Bennitte, Baker, Uraski, and Frank all threatened to punish him if he did not "squash" his grievance. It is not clear that these alleged actions did not constitute retaliation for Plaintiff's grievance against Hoppenstedt, or prior restraint to the extent they were aimed at limiting future speech. Count 2 will therefore proceed against Hoppenstedt, Baker, Bennitte, Uraski, and Frank.

**Count 3 – Due Process**

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty-four hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the

reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Plaintiff has failed to include any allegations regarding his disciplinary hearing. He attached his disciplinary ticket to the Complaint, however, and though the copy quality is poor, it appears that Plaintiff was served with the ticket and notified of his rights to appear at the hearing and call witnesses. (Doc. 1-1, pp. 20-21). There is no indication that Plaintiff was deprived of procedural protections at the hearing. For this reason, Plaintiff has failed to state a due process claim based on his disciplinary ticket, and Count 3 will be dismissed without prejudice.

**Count 4 – Failure to Investigate Grievance**

Generally, a prison official's mishandling of grievances states no claim where the official "otherwise did not cause or participate in the underlying conduct." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The mishandling of grievances by a prison official, more specifically, does not give rise to a First Amendment claim for the denial of access to the courts. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a suit in federal court. 42 U.S.C. § 1997e(a). Administrative remedies are considered to be unavailable under the PLRA, however, when prison officials fail to respond to a prisoner's grievances. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted).

Further, the Seventh Circuit has "specifically denounc[ed] a Fourteenth Amendment substantive due process right to an inmate grievance procedure." *Grieveson*, 538 F.3d at 772. As explained in *Antonelli*, 81 F.3d at 1430-31, "any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a state's inmate grievance procedures do not give rise

to a liberty interest protected by the Due Process Clause." *Id.* at 1430-31 (internal citations omitted). Because Plaintiff had no expectation of a particular outcome from his grievance, there is no viable claim which can be vindicated through 42 U.S.C. § 1983. *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992) (without a predicate constitutional violation one cannot make out a *prima facie* case under Section 1983).

For these reasons, Plaintiff's claim that Hess did not investigate his staff conduct grievance is not a viable Section 1983 claim. Count 4 will therefore be dismissed with prejudice.

**Count 5 – Intentional Infliction of Emotional Distress**

Where a district court has original jurisdiction over a civil action such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc*., 72 F.3d 1294, 1299 (7th Cir. 1995)).

Plaintiff has brought a claim of intentional infliction of emotional distress against the defendants. Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla*., 100 So. 2d 396 (Fla. 1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe

emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

Plaintiff's allegations that Hoppenstedt's actions made him fear for his safety may support a claim for intentional infliction of emotional distress. Count 5 will therefore proceed against Hoppenstedt. Because he has not sufficiently alleged that the remaining defendants intended to inflict severe emotional distress on him or that their conduct actually caused him severe emotional distress, Plaintiff has failed to state an intentional infliction of emotional distress claim against them. Accordingly, Count 5 will be dismissed without prejudice as against Frank, Baker, Hess, Bennitte, Uraski, Love, and Jaimet.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **HOPPENSTEDT** and is **DISMISSED** without prejudice as against **HESS**, **BENNITTE**, and **URASKI**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **HOPPENSTEDT**, **BAKER**, **BENNITTE**, **URASKI**, and **FRANK**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED** without prejudice for failing to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 4** is **DISMISSED** with prejudice as frivolous.

**IT IS FURTHER ORDERED** that **COUNT 5** shall **PROCEED** against **HOPPENSTEDT** and is **DISMISSED** without prejudice as against **FRANK**, **BAKER**, **LOVE**, **JAIMET**, **HESS**, **BENNITTE**, and **URASKI** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **JAIMET**, **LOVE**, and **HESS** are **DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1**, **2**, and **5**, the Clerk of Court shall prepare for **HOPPENSTEDT**, **BAKER**, **BENNITTE**, **URASKI**, and **FRANK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs.

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, Plaintiff's Motion for Appointment of Counsel (Doc. 3) is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision.

**IT IS SO ORDERED.**

DATED: June 6, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**